Morris E. Spector, J.
The memorandum decision of March 19, 1973 is recalled and republished, as follows:
In this consolidated action, plaintiffs, by separate motion, seek a temporary injunction restraining the election of Councilmen from the newly created councilmanic districts in thef City of New York, The respective motions are denied.
*367 At the outset, it must be noted that there is a scheduled primary in June of this year, and the limited statutory period for circulating nominating petitions had commenced prior to the submission of this motion. The granting of interim injunctive relief at this posture of the electoral process would cast confusion and doubt with respect to the coming elections. In contrast, if plaintiffs are successful in this action, adequate judicial relief is ¿vailable. While plaintiffs may not have been guilty of delay in making the respective motions, the fact remains that time is a factor in providing fair elections, and the granting of the drastic remedy sought by plaintiffs would unduly interfere with the electoral process.
Additionally, movants have not established a clear right to the sought injunctive relief. Thirty-three councilmanic districts were created in the City of New York (L. 1971, ch. 1206; Local Laws, 1973, No. 4 of City of New York), and to reach the ultimate goal of equal representation for all people, each district should include 239,334 inhabitants. The Council drew the lines of the respective districts so that the greatest deviation from the ultimate goal was less than l/10th of 1%. Movants make no clear showing that the Council has not acted fairly with respect to redistricting as to population. However, they urge that established case law permits a greater deviation from the goal of absolute equality of population size, and if the Council provided greater population variance, geographical compactness in the size of the district would be achieved. The contention is of doubtful validity. The surest protection against the evils of gerrymandering is to provide electoral districts of equal populations and the achievement of that goal should be a guiding principle in redistricting (Matter of Schneider v. Rockefeller, 21 N Y 2d 420, 428).
In addition to equality of numbers, consideration should be given to the factors of compactness and contiguity of the districts. However, these factors are subjected to considerations of the topographic features of the City of New York, which is of an irregular shape and traversed by navigable waterways. As a result of these geographical features, electoral districts in the City of New York do not lend themselves to being shaped in traditional easily recognizable geometric forms (Matter of Richardson [Stark], 307 N. Y. 269, 274).
The plaintiffs in the New York County action urge that redistricting should have been made in a manner which would provide those areas of the city represented by Republicans in the New York State Legislature to have a Councilman of the *368 same political party; and the plaintiffs in the Bronx action contend that redistricting should have insured representation by racial and ethnic minority groups'. Such claims are cogent but they do not establish a clear right to the injunctive relief. On the argument, plaintiffs asserted, in substance, that the alleged objectionable districts had a population of persons of widely disparate socio-economic groups. This type of an electoral district would, in effect, be a microcosm of the City of New York, and it cannot be said that the Council did not act with reasonable fairness in providing electoral districts that include a broad spectrum of the diverse groupings that reside within the city.
Plaintiffs point to the Richmond County Districts and the 8th District, which include portions of waterways, asserting that such districts are not contiguous. The 8th District includes portions of the Bronx, Manhattan and Queens. While this district lies within three counties and there are problems caused by the crossing of county lines (cf. Matter of Vallone v. Power, 35 A D 2d 655), a triborough district is not without political tradition in the City of New York. The movant Badillo has represented this type of a district in the Congress.
Except for the waterways, the land areas of the three parts of the district are contiguous. While the map submitted by plaintiffs as an exhibit graphically indicates that the 7th District interrupts contiguity, in fact, it does not. The entire population of the 7th District resides in Manhattan, and the boundaries of that district are the county lines of New York County. The easterly county line of New York County lies on the shore of Queens County, and includes the East River. Except for the islands lying in the East River, no habitants of the city are affected by the use of the county line which is merely a convenient frame for the district. Had that line been drawn on the shores of New York County and included the islands, there would be no change of population in the 8th District and the exhibit would have graphically displayed that the district is contiguous. iSimilarly, the portions of the districts in Richmond County abutting on the water are also contiguous with the districts lying in the other counties.
In summary, the Council was required to. divide the City of New York into 33 equal districts and movants make no clear showing that the apportionment did not provide districts that are as compact and as contiguous as possible while at the same time providing for equal representation of the inhabitants of the district. The stay heretofore granted is vacated.